FILED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**Southern Division**

99 MAR 29 PM 3: 32

U.S. DISTRICT COURT
N.D. OF ALABAMA

PHILLIPS DISTRIBUTORS, INC.,      )
    Plaintiff(s);      )
          )
-vs.-      )
          )
MAGNETEK, INC.,      )    No. CV-94-P-2374-S
    Defendant(s).      )
          )
-vs.-      )
          )
LITTON SYSTEMS, INC.; LITTON      )
INDUSTRIES, INC.; and JOHN C.      )
WHITEHEAD      )

ENTERED

MAR 2 ) 1999

## OPINION

Seven motions were taken under submission in December 1997: a Motion by Litton Systems,

Inc. and Litton Industries, Inc. (collectively "Litton") for Partial Summary Judgment on certain

contract-based claims; a Motion by MagneTek, Inc. for Partial Summary Judgment on certain

contract-based claims; a Motion by Phillips Distributors, Inc. ("Phillips") and John C. Whitehead

for Summary Judgment on Litton's CERCLA claim; a Motion by Whitehead for Summary Judgment

on his counterclaim against Litton; a Motion by Phillips and Whitehead for Summary Judgment on

MagneTek's counterclaims; a Cross Motion by MagneTek for Summary Judgment on all of its

claims against Phillips and Whitehead; and a Motion by Phillips and Whitehead to Strike the

statement of opinions, qualifications, and background of Michael A. Miller. As many of the facts

of this case have been recounted in earlier opinions, only a brief summary will follow.

156

## Facts

Whitehead owned property in Alabama that he leased to Litton Systems in 1973. In 1984, MagneTek bought Jefferson Electric from Litton and assumed the lease. Whitehead sold the property to Phillips[1] in 1987. Phillips is a Mississippi corporation that has never registered to do business in Alabama. In addition to being chartered to engage in the gasoline business, Phillips owns and leases property. Although the 1973 lease provided that the tenant had to give written notice of its intent to exercise its option to renew the lease at least ninety days before the end of the lease term, MagneTek failed to do this in 1988. MagneTek and Phillips negotiated a new lease in 1989, after the term of the 1973 lease had expired.

In 1991, anticipating closing the facility at the end of its lease, MagneTek conducted an environmental investigation of the property. After initial testing indicated soil contamination, MagneTek excavated contaminated soil in 1991. Pursuant to directions from the Alabama Department of Environmental Management (ADEM), MagneTek installed several groundwater monitoring wells. In the fall of 1993, additional testing indicated groundwater contamination. MagneTek vacated the property at the end of its lease in January 1994, advising ADEM that it was closing the monitoring wells. In March 1994, Phillips received a notice of violation letter from ADEM and subsequently filed this action against MagneTek on September 28, 1994.

## Analysis

*MagneTek's Motion for Partial Summary Judgment, Litton's Motion for Partial Summary Judgment, & Whitehead's Motion for Summary Judgment on his counterclaim against Litton*

---

[1] Whitehead is the president of Phillips.

These motions relate to contract-based claims that the parties have asserted against one another. The resolution of these motions focuses on the following three main issues: 1) whether the 1989 lease entered into by Phillips and MagneTek extinguished any claims and rights based on the 1973 lease between Whitehead and Litton; 2) whether Phillips was doing business in Alabama and is therefore barred from pursuing these state law-based claims; and 3) whether Whitehead's indemnity claims are barred by the applicable statute of limitations.

### 1. The Effect of the 1989 Lease on the 1973 Lease

MagneTek's and Litton's motions for summary judgment on Phillips's and Whitehead's claims under the 1973 lease are based on the argument that the 1989 lease was a novation of the 1973 lease that discharged any further rights and obligations under the 1973 lease. MagneTek and Litton contend that the elements of novation are satisfied because there was 1) a previous valid obligation; 2) an agreement to the new contract or obligation; 3) an agreement that the new contract was an extinguishment of the old contract or obligation; and 4) a new valid contract or obligation.[2] In response, Phillips and Whitehead assert that the 1989 lease did not extinguish the 1973 lease because the 1973 lease had already ended. Indeed, although the 1973 lease term ended September 30, 1988, the parties did not enter into the second lease agreement until February 2, 1989. Although MagneTek and Litton cite cases holding that differences between the agreements, as well as the facts and circumstances surrounding the transaction, can show intent to extinguish the old contract, the cases cited all involve contracts that were in existence at the time of the arguable novation. Because the court concludes that the 1989 lease could not extinguish a prior lease whose term had already

---

[2] *See Butler v. Walton*, 56 So. 2d 369, 375 (Ala. App. 1951).

ended, the court finds that Phillips's and Whitehead's claims under the 1973 lease are not barred by

a novation. Additionally, the absence, in the 1989 lease or otherwise, of a specific agreement to

cancel post-termination rights and obligations under the old lease precludes a finding that the 1989

lease expressly extinguishes the rights under the 1973 lease. Consequently, MagneTek's and

Litton's motions for summary judgment on this ground are due to be denied.[3]

### 2. Phillips's Failure to Qualify to Do Business

MagneTek has asked the court, at least twice before, to consider whether Phillips is barred

from pursuing contract-based claims because it failed to qualify to do business in Alabama. As the

court has previously noted, a corporation that "does business" in Alabama without obtaining a

certificate of authority is not entitled to pursue contract-based claims in the Alabama courts.[4] A

corporation does business in Alabama if it is "engaged in the transaction of business, or any part

thereof, it was created and organized to transact."[5] Merely leasing or owning property, if incidental

to the corporation's business, is not "doing business."[6] However, a single act of business can

constitute "doing business" if it is in the exercise of a corporate function.[7]

In prior opinions, the court held that, because Phillips was chartered to engage in the gasoline

business, its ownership and leasing of land in Alabama did not constitute "doing business" so as to

---

[3] MagneTek and Litton also argue that Phillips and Whitehead should be estopped from making claims under the 1973 lease because they insisted that MagneTek enter into the 1989 lease. Although the court is not persuaded that Phillips's and Whitehead's insistence on the new lease should bar them from enforcing post-termination rights and obligations under the old lease, the court notes that summary judgment would be inappropriate on estoppel grounds.

[4] *See* Ala. Code § 10-2B-15.02(a).

[5] *Friedlander Bros., Inc. v. Deal*, 118 So. 508, 510 (Ala. 1928) (citations omitted).

[6] *See Wallace v. Brewer*, 315 F. Supp. 431, 453 (M.D. Ala. 1970).

[7] *See Green Tree Acceptance, Inc. v. Blalock*, 525 So. 2d 1366, 1370 (Ala. 1988).

preclude its contract-based claims.   This interpretation involved a fairly literal reading of

*Friedlander*'s "engaged in the transaction of business . . . it was created and organized to transact"

language.  Although Phillips was also chartered to own and lease real estate, the court focused on

the main business Phillips was organized to transact, and not on whether its Alabama activities were

incidental to the business in which it was engaged.  Upon review of the case law, the court believes

that the focus of its inquiry should be on "the important distinction between a merely incidental

preliminary step and the doing or transaction of the real business of the corporation."[8]

MagneTek now asserts that no factual dispute precludes summary judgment because Phillips

produced documents indicating that its primary business is the ownership and leasing of property

and because Phillips admitted that its only activities in Alabama have been the ownership and

leasing of property.  Although the evidence indicates that Phillips's only activities in Alabama are

the ownership and leasing of property, the court must look beyond Alabama to determine what the

substance of Phillips's business was at the time it sought to enforce the contracts.  Because the

evidence shows that owning and leasing property was Phillips's ordinary corporate business, and not

merely incidental to other corporate functions, the court finds that Phillips was doing business in

Alabama at the time it brought this action.  Because Phillips failed to qualify, Phillips is barred from

bringing claims arising out of the leases.  Consequently, MagneTek's and Litton's motions for

summary judgment as to Phillips's counts III, IV, VIII, IX, and X are due to be granted.

3.  Whitehead's Claims and the Statute of Limitations

Whitehead's counterclaims against Litton and MagneTek seek declaratory relief regarding

---

[8] *See Friedlander*, 118 So. at 510.

the indemnity clause in the 1973 lease.   Whitehead's 1973 lease with Litton contained an

Indemnification of Landlord provision under which Litton agreed to indemnify Whitehead against

all liability arising out of or connected with Litton's occupancy of the property "unless caused or

contributed to by the negligence of Landlord."   Additionally, the lease provided that its terms and

agreements "shall be binding upon and inure to the benefit of the parties hereto, their heirs, personal

and legal representatives, successors and assigns."

In support of their summary judgment motions, Litton and MagneTek point to this court's

October 1996 opinion holding that certain of Phillips's claims were barred by the statute of

limitations because they had not been brought within six years of the date that Phillips had notice

of the fact of contamination.   In response, Whitehead notes that, although the court did find that the

claims for breach of the 1973 lease terms were barred, the court did not consider any indemnity

claims.   Whitehead argues that claims for indemnification do not accrue until the indemnitee suffers

a loss or until the indemnitor otherwise breaches his agreement.   Because the court agrees with

Whitehead's argument, the summary judgment motions as to Whitehead's counterclaims on statute

of limitations grounds are due to be denied.[9]

Whitehead's motion for summary judgment as to his indemnity claim against Litton is due

to be denied at this time because genuine issues of material fact exist as to whether any negligence

on Whitehead's part caused or contributed to Litton's potential liability under the lease.

---

[9] Although MagneTek argues in its Motion for Partial Summary Judgment that Phillips's and Whitehead's prior knowledge of and failure to correct alleged contamination bars recovery under indemnity claims, the court simply notes that genuine issues of material fact would preclude summary judgment on these grounds.

*Phillips's and Whitehead's Motion for Summary Judgment on Litton's CERCLA § 107 Claim*

The Comprehensive Environmental Response, Compensation, & Liability Act (CERCLA) provides two avenues of cost recovery that vary according to the responsibility of the party bringing the action.[10]  Section 107(a)[11] provides a cost recovery action for plaintiffs who are not liable or potentially liable for response costs against parties who are potentially responsible for contamination.[12]  Typically, actions under § 107 are brought by governmental plaintiffs that have incurred clean-up costs.[13]  Section 113(f)[14] provides a contribution action that equitably allocates response costs among responsible or potentially responsible parties.[15]  In *Redwing Carriers, Inc. v. Saraland Apartments*, the Eleventh Circuit stated that actions under § 107 must be brought by innocent parties to the contamination.[16]

Phillips and Whitehead argue that Litton cannot bring a claim under CERCLA's § 107 because Litton is not an innocent party.  In support of their motion, Phillips and Whitehead offer excerpts of depositions of three former employees of Jefferson Electric who testified that they dumped and witnessed others dumping chemicals during the time that Litton owned Jefferson Electric.  As Litton has submitted no evidence demonstrating the existence of genuine issues of

---

[10] *See Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1513 (11th Cir. 1996).

[11] Comprehensive Environmental Response, Compensation & Liability Act of 1980, codified at 42 U.S.C. § 9607(a).

[12] *See Redwing Carriers*, 94 F.3d at 1513.

[13] *See id.*

[14] Comprehensive Environmental Response, Compensation & Liability Act of 1980, codified at 42 U.S.C. § 9613(f).

[15] *See Redwing Carriers*, 94 F.3d at 1513.

[16] *See id.* at 1496.

7

material fact, and as Litton has asserted a contribution claim under § 113 against Phillips, the motion

for summary judgment as to Litton's § 107 claim is due to be granted.

*Phillips's and Whitehead's Motion for Summary Judgment on MagneTek's Counterclaims &*
*MagneTek's Cross Motion for Summary Judgment*

These motions concern MagneTek's CERCLA claims and its common law claims for

contribution and restitution. In support of their motion, Phillips and Whitehead first argue that

MagneTek cannot recover its previously incurred clean up costs under CERCLA's §§ 107 or 113

because MagneTek's remedial actions were not consistent with the National Contingency Plan

(NCP). In response, MagneTek asserts that its actions were removal actions that, when evaluated

as a whole, substantially complied with the NCP. Thus, not only MagneTek's compliance, but also

the character of its actions, is at issue.

To address the sufficiency of MagneTek's compliance with the NCP, the court must first

identify the standard by which MagneTek's efforts must be measured. Although a remedial action

requires more stringent compliance with particular requirements in the NCP, a removal action

nevertheless requires substantial compliance when viewed as a whole.[17]  Because genuine issues of

material fact exist as to whether the soil excavation, sampling, and installation of groundwater

monitoring wells, spanning more than two years, were separate removal actions or a remedial action,

the court cannot determine at this stage whether MagneTek sufficiently complied with the NCP so

as to enable it to pursue a CERCLA claim. Consequently, the motions for summary judgment as

to MagneTek's §§ 107 & 113 claims are due to be denied.

In support of their motion, Phillips and Whitehead also assert that MagneTek's § 107 claim

---

[17] *See, e.g., Bancamerica Commercial v. Mosher Steel of Kansas*, 100 F.3d 792, 797 (10th Cir. 1996).

to recover previously incurred costs fails because § 107 does not support a contribution action. Although Phillips and Whitehead assume MagneTek is a potentially responsible party (PRP), MagneTek's argument proceeds initially on the premise that MagneTek is an innocent party. MagneTek seeks summary judgment on its claim of joint and several liability under § 107[18] as well as a declaratory judgment of liability for future response costs. In the alternative, MagneTek asks the court to allocate to Phillips and Whitehead a substantial portion of MagneTek's response costs pursuant to § 113. Although the court has determined that summary judgment as to the CERCLA claims is inappropriate on the basis of compliance with the NCP, the court also notes that genuine issues of material fact exist as to whether MagneTek is an innocent party or a PRP limited to contribution under § 113.

Phillips and Whitehead also argue that MagneTek cannot recover under common law theories of contribution and restitution because CERCLA preempts these claims and because MagneTek cannot make out prima facie cases for either of these claims. MagneTek asserts that its state common law claims would be preempted only if Phillips and Whitehead were found liable under § 113. As this court has previously held, MagneTek's state law claims are preempted to the extent they seek amounts otherwise recoverable under § 113.[19] As summary judgment is inappropriate as to MagneTek's § 113 claim, the court cannot at this time grant summary judgment as to the state law claims.

---

[18] Joint and several liability applies under § 107(a) unless a defendant demonstrates that the harm is divisible, meaning there are distinct harms or there is a reasonable basis for determining the contribution of each cause to a single harm. *See* Restatement (Second) of Torts § 433A (1965). In contrast, there is no joint and several liability among defendants in a § 113 action. *See Redwing Carriers*, 94 F.3d at 1514.

[19] Although the court notes the Second Circuit's conclusion in *Bedford Affiliates v. Sills*, 156 F.3d 416 (2d Cir. 1998), that CERCLA preempts state law remedies of restitution and indemnification, the court declines to address this issue before a determination on the viability and success of the § 113 claim.

**Conclusion**

For the reasons stated above, the motions by MagneTek and Litton for partial summary judgment as to the contract-based claims are due to be denied as to Whitehead's claims and granted as to Phillips's claims. Whitehead's motion for summary judgment as to Count III of its counterclaim against Litton is due to be denied. The motion by Phillips and Whitehead for summary judgment as to Litton's CERCLA § 107 claim is due to be granted. The motion by Phillips and Whitehead for summary judgment on MagneTek's counterclaims and the cross motion by MagneTek on those counterclaims are due to be denied. Additionally, the court will deny the motion by Whitehead and Phillips to strike the expert report of Michael Miller, without prejudice to its being refiled to the extent it is still material in light of the rulings on summary judgment.

Dated: _March 29_, 1999

_Sam C. Pointer_
Chief Judge Sam C. Pointer, Jr.

Service List:
    Mr. Franklin J. Ozment
    Mr. Lawrence B. Clark
    Mr. John Hahn
    Mr. Stuart E. Hunt
    Mr. Jefferson E. Stewart
    Mr. Eugene R. Wasson
    Mr. Samuel H. Franklin
    Mr. William S. Cox, III